```
1   MARC J. FAGEL
    JOHN S. YUN (yunj@sec.gov)
2   KEVIN M. GROSS (grossk@sec.gov)
    (Counsel admitted in California)
3   Attorneys for Plaintiff
    SECURITIES AND EXCHANGE COMMISSION
4   44 Montgomery Street, Suite 2600
    San Francisco, California  94104
5   Telephone:  (415) 705-2500
    Telecopy:  (415) 705-2501
```

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

# AT SEATTLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>vs.<br><br>JOSEPH C. LAVIN and GLOBAL ASSET PARTNERS, LLP,<br><br>        Defendants, | Civil Action No.<br>C07-1188RSL<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT AGAINST DEFENDANTS JOSEPH C. LAVIN AND GLOBAL ASSET PARTNERS, LLP**<br><br>**NOTE ON MOTION CALENDAR: JULY 11, 2008** |

Plaintiff's Summary Judge Motion
C07-1188RSL

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Securities and Exchange Commission moves for summary judgment against defendants Joseph C. Lavin ("Lavin") and Global Asset Partners, LLP ("Global")(together, "Defendants") on the grounds that the undisputed facts establish Defendants' (I) sale of unregistered securities in violation of Section 5 of the Securities Act of 1933 ("Securities Act"), (ii) sale of securities through material misrepresentations in violation of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") and (iii) breaches of an investment adviser's fiduciary duties in violation of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") as alleged in the first, second third and fourth claims for relief in the Complaint.

This Motion is based upon Defendants' admission in their Answer of many of the Commission's allegations. It is also based upon Lavin's written plea agreement ("Plea Agreement") in the related *United States v. Joseph C. Lavin*, Case No. CR-07-366RAJ, criminal case (the "Criminal Proceeding"). Taken together, Defendants' Answer and Lavin's Plea Agreement establish all of the elements of the Commission's four claims against both Lavin and Global so as to entitle the Commission to summary judgment.

This Motion for Summary Judgment will be based upon the attached Memorandum of Points and Authorities, the Declaration of John S. Yun (with exhibits), the Proposed Order, the pleadings on file, any additional evidence submitted by the Commission and such oral argument as the Court elects to receive.

DATED:   June 10, 2008

Respectfully submitted,

*/s/ John S. Yun*
John S. Yun
Kevin M. Gross
Attorneys for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

On August 1, 2007, the Securities and Exchange Commission filed this action against defendants Joseph C. Lavin ("Lavin") and Global Asset Partners, LLP ("Global") (together, "Defendants") alleging that they defrauded investors through misrepresentations in violation of Section 17(a) of the Securities Act of 1933 (Securities Act") and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), that they breached their fiduciary duties to clients in violation of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), and that they offered and sold unregistered securities in violation of Section 5 of the Securities Act. Complaint, ¶¶ 42-54 (attached as Exhibit 1 to Declaration of John S. Yun ("Yun Declaration")). Defendants managed three investment funds that sold about $5 million in securities to over 100 investors without registering those securities for sale. Defendants made material misrepresentations about their prior performance as currency traders and about how the money would be invested. Additionally, Defendants misappropriated investor funds by using investor money for personal expenses and by taking management fees that had not been earned. Complaint, ¶¶ 1-6, 12, 16-22.

From the outset, Defendants admitted many of the Commission's allegations. Answer, ¶ 2 (admitting paragraphs 7-9, 11-13, 16-22, 30, 33 and 34 of the Complaint)(attached as Exhibit 2 to the Yun Declaration). Furthermore, on November 2, 2007, Lavin entered into a written plea agreement ("Plea Agreement") in the related *United States v. Joseph C. Lavin*, Case No. CR-07-366RAJ, criminal case (the "Criminal Proceeding"). Yun Declaration, Exhibit 3. That Plea Agreement acknowledges Lavin's role in committing wire fraud and money laundering by making material misstatements in connection with the sale of securities in the investment funds and misappropriating fund assets by taking unauthorized fees and using assets for personal expenses. Plea Agreement, ¶¶ 3, 9. Based upon the Plea Agreement, the Court in the Criminal Proceeding entered a Judgment of Conviction against Lavin on March 21, 2008 (the "Conviction"). Yun Declaration, Exhibit 4.

Taken together, Defendants' Answer and Lavin's Guilty Plea establish all of the elements of the Commission's claims for relief against both Lavin and Global so as to entitle the Commission to summary judgment. The Conviction serves, under the doctrine of collateral estoppel, to establish

conclusively against Lavin all of the admissions made in his Plea Agreement. *See Larios-Mendez v. I.N.S.*, 597 F.2d 144, 146 (9th Cir. 1979) (holding that guilty plea in criminal case was controlling in later deportation proceeding); *Ivers v. U.S.*, 581 F.2d 1362, 1366-67 (9th Cir. 1978) (holding that guilty plea for failing to report cross-border cash transaction was controlling in civil forfeiture proceeding by Customs Service). Both the Plea Agreement and the Answer serve as admissions that may be used against Lavin and Global. *See* Fed. Evid. Rule 803(22) (stating that evidence of conviction for crime punishable by one year of more of imprisonment is admissible to "prove any fact essential to sustain the judgment"). As a result, the Plea Agreement and Answer establish a *prima facie* case on the four claims against Defendants, and thereby entitle the Commission to summary judgment. *S.E.C. v. Hilsenrath*, 2008 WL 2225709 at *3-8 (N.D. Cal. May 29, 2008)(granting partial summary judgment based upon defendant's guilty plea and failure to offer contrary evidence).

## II. FACTUAL BACKGROUND

The Commission initiated this proceeding on August 1, 2007 against Lavin and Global by naming them as defendants in the Complaint. Yun Declaration, Exhibit 1. Lavin was Global's principal officer and controlled its operations. Complaint, ¶ 11. From 2002 through 2005, Lavin and Global sold securities in three purported investment funds – the Global Asset Management Short Term Fund, Medium Term Fund and Long Term Fund (collectively, the "Funds"). Global was the investment adviser to the Funds, while Lavin was the sole manager of Global. *Id.*, ¶ 12. Defendants solicited investments in the Funds through general advertising, investment seminars, telephone calls, email and an internet website. *Id.*, ¶ 13. As a result of these public solicitations, over 100 members of the public invested over $5 million in the Funds. *Id.*, ¶ 16. Defendants failed, however, to file the necessary registration statement with the Commission for the offer or sale of the Funds' securities. *Id.*, ¶ 17.

Lavin and Global provided potential investors with written offering materials ("Fund Memoranda") to describe the Funds and the supposed investment strategy of each of the three investment funds. The Fund Memoranda represented that investor money would be invested in either international currency markets or asset-backed investments. The Fund Memoranda also specified the monthly targeted returns of each the three investment funds and represented that Global could not collect adviser fees from an investment fund unless that particular investment fund exceeded its monthly targeted return. That

Plaintiff's Summary Judge Motion
C07-1188RSL
2

restriction on Global's receipt of advisory fees was represented to investors as creating "a tremendous incentive to meet and exceed the Targeted Monthly Return each and every month." *Id.*, ¶¶ 18-21.

The Fund Memoranda contained representations about Lavin's prior currency trading experience. *See id.*, ¶ 33. Those representations were materially false and misleading because Lavin's only currency trading experience was with an earlier Ponzi scheme called Global Currency Trading Group ("Global Currency") in which Lavin lost over $1 million of the investors' money. *Id.* Additionally, Lavin made undisclosed transfers of the Funds' assets to his personal brokerage account, which he used to trade microcap securities. Lavin's microcap securities trading was not disclosed to the Funds' investors, and resulted in losses. *Id.*, ¶ 30.

On or about September 18, 2007, Lavin and Global filed their Answer to the Complaint. Yun Declaration, Exhibit 2. In their Answer, Lavin and Global admitted the allegations set forth in paragraphs 7 through 9, 11 through 13, 16 through 22, 30, 33 and 44 of the Complaint. Answer, ¶ 2. Defendants' Answer therefore admits *all* of the factual statements that have just been set forth.

On November 1, 2007, the United States Attorney initiated the Criminal Proceeding against Lavin with a felony information. Based on prior plea negotiations, the United States Attorney and Lavin entered into the Plea Agreement on November 2, 2007. Yun Declaration, Exhibit 3. In the Plea Agreement, Lavin agreed to plead guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Plea Agreement, ¶ 2. Each of those counts involved maximum prison sentences of twenty years. *Id.*, ¶ 4.

In the Plea Agreement, Lavin admits that he solicited investors in the Funds from 2003 to 2005 with representations that assets would be invested in currencies and asset-backed instruments. He also made representations to investors that he would receive compensation only if the Funds' earnings exceeded their targeted returns and that he was an experience financial executive who consistently earned over 2% per month in the Funds. *Id.*, ¶ 9.

Lavin also admits that his representation about consistently earning a 2% monthly return in the Funds was "knowingly false" for a period of years. In reality, he was unable to meet the targeted returns, but failed to disclose that fact to investors. Additionally, Lavin was not an experienced financial executive. Instead, Lavin "continued the pretense that the investments were earning in excess of 2% .

Plaintiff's Summary Judge Motion
C07-1188RSL

3

. . [and] contrary to his promises, also used [a] certain portion of [the] investor funds for his personal use." *Id.*

Lavin further admits that between 2003 and 2005, he raised about $13 million from over 200 investors in the Funds "as a result of his scheme and artifice to defraud."[1] Although some investor funds were used for currency or asset-backed investments, other funds were used for undisclosed and unauthorized investments or were diverted through Global to Lavin. *Id.*

After questioning Lavin under oath on November 2, 2007, a Magistrate Judge recommended accepting the Plea Agreement. Based upon the Magistrate Judge's recommendation, the Court in the Criminal Proceeding accepted Lavin's guilty plea on November 26, 2007. Yun Declaration, Exhibit 5. On March 21, 2008, the court in the Criminal Proceeding entered Lavin's Conviction. Yun Declaration, Exhibit 4. Lavin was sentenced to 54 months in prison, three years of probation and the payment of approximately $11.6 million in restitution. *Id.*

### III. LEGAL ARGUMENT

#### A. LEGAL STANDARDS FOR PARTIAL SUMMARY JUDGMENT

Rule 56©) of the Federal Rules of Civil Procedure provides that a court shall render summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). As the Supreme Court wrote in *Celotex Corp. v. Catrett*: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. Proc. 1).

Once the moving party has identified those portions of the record that show the absence of a genuine issue of material fact, the burden is on the opposing party to controvert that showing. *Id.* at 322. The adverse party, "by affidavits or as otherwise provided in this rule, must set forth specific facts

---

[1] The Plea Agreement indicates that more investors put more money into the Funds than was alleged in the Complaint. The higher numbers in the Plea Agreement do not, however, affect Lavin's or Global's liability on summary judgment because both sets of numbers – in the Answer and in the Plea Agreement – are sufficient to establish the securities violations alleged in the Complaint.

showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed. R. Civ. Proc. 56(e). Furthermore, in providing evidence to contest a summary judgment motion, the opposing party faces a higher evidentiary burden if the opposing party's position is implausible. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

### B. THE ANSWER AND CONVICTION SUPPORT SUMMARY JUDGMENT.

The Commission's summary judgment motion is based upon the explicit admissions of both Lavin and Global. First, the admissions found in paragraph 2 of the Answer establish facts as being undisputed, and thereby support the granting of summary judgment. Fed. R. Civ. Proc. 56(c) (providing that summary judgment motion may be based upon the pleadings on file). As discussed below, Lavin's and Global's admission of numerous key allegations in the Complaint are sufficient to establish their liability on each of the four claims for relief in the Complaint.

Second, the admissions found in Lavin's Plea Agreement also serve as another, adequate basis for granting summary judgment. The facts underlying Lavin's Conviction – as stated in the Plea Agreement – should be given preclusive effect under the doctrine of collateral estoppel. *See United States v. Bower*, 95 F. Supp. 19, 21-22 (E.D. Tenn. 1951) (holding that guilty plea for False Claims Act violation entitled government to relief through a directed verdict based upon collateral estoppel or a summary judgment motion). Under the doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). The purpose of collateral estoppel is to promote judicial economy by preventing needless litigation and to minimize the possibility of inconsistent decisions. *See generally* 18 Moore's Federal Practice, §132.01[3] (3d ed. 1998).

A conviction based upon a guilty plea may, like one based upon a jury verdict, give rise to collateral estoppel in a civil proceeding by the government. *De Cavalcante v. Commissioner of Internal Revenue*, 620 F.2d 23, 25-26 & n. 9 (3rd Cir. 1980) (holding that guilty plea and additional admissions relating to gambling enterprise should receive collateral estoppel effect during later tax proceeding). As the court wrote in *United States v. Bower, supra*, a "plea of guilty, pursuant to which

a fine has been imposed and paid, is a matter of judgment record and imports that absolute and incontrovertible verity which ought to preclude the person against whom it is later produced from denying it." *Id.*, 95 F. Supp at 21. The Ninth Circuit therefore recognizes the collateral estoppel effect of a guilty plea in civil actions by the government. *Larios-Mendez v. I.N.S.*, *supra*, 597 F.2d at 146; *Ivers v. U.S.*, *supra*, 581 F.2d at 1366-67.

Besides being conclusive against Lavin due to collateral estoppel, the admissions in the Plea Agreement also constitute admissible evidence against Global in this proceeding. Defendants admit that Lavin was Global's sole principal and controlled Global's operations. Complaint, ¶ 11. Because he made the admissions as Global's principal and while under oath before a Magistrate Judge, Lavin's admissions in the Plea Agreement are therefore imputed to, and binding upon, Global for purposes of this motion. *See S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1089 n. 3 (2d Cir. 1972)(imputing individual principal's scienter to entity). *See also In re: Reed E. Slatkin*, ___ F.3d 4965, 4974-76 2008 U.S. App. LEXIS 9694, 49 Bankr. Ct. Dec. 267 (9th Cir. May 6, 2008)(holding that admissions in guilty plea may be used against co-defendant under Evidence Rule 807 when the guilty plea was accepted by court under oath).

### C.  DEFENDANTS' LIABILITY UNDER THE COMPLAINT.

The Commission alleges four claims for relief in the Complaint. As the Commission now demonstrates, the Answer and Plea Agreement establish Lavin's and Global liability on all four claims for relief.

#### 1.  Defendants' Liability For Material Misstatements And Omissions.

In its second and third claims for relief, the Commission alleges that Defendants defrauded investors in violation of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act during their sale of investments in the Funds. Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities, while Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit fraud in connection with the purchase or sale of securities. 15 U.S.C. § 77q(a); 15 U.S.C. §78j(b); 17 C.F.R. § 240.10(b) (2008).

Violations of Section 17(a)(1), Section 10(b) and Rule 10b-5 require scienter, which is a "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425

U.S. 185, 193 n.12, 96 S. Ct. 2194, 48 L. Ed. 2d 811 (1976). The Commission can establish scienter by showing that a person acted knowingly or recklessly. *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990) (en banc). The misrepresentations and omissions must be material. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S. Ct. 2126, 48 L. Ed. 2d 757 (1976). A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *Id.* Representations regarding how investor funds will be used, the condition of the entity in which they are investing, and the compensation being paid to others are material. *See S.E.C. v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980) (stating that "materiality of information relating to financial condition, solvency and profitability is not subject to serious challenge."); *Koehler v. Pulvers*, 614 F. Supp. 829, 842 (S.D. Cal. 1985) (stating that material information includes, at a minimum, "accurate information on the use of investor funds, the benefits to be derived by the issuer, and relevant financial statements").

Defendants' Answer and Lavin's Plea Agreement establish all of the elements of the Commission's fraud claims against Defendants. Defendants admit in the Answer that they provided Fund Memoranda to investors and represented that the Funds would invest in foreign currencies and asset-backed securities. Answer, ¶ 2 (admitting Complaint, ¶¶ 18-19). The Fund Memoranda specified targeted monthly returns for each of the three Funds and stated that management fees would not be taken if those targets were not met. The purpose of this limitation on management fees was to provide an incentive to meet the monthly targeted returns. *Id.* (admitting Complaint, ¶ 22).

Contrary to those representations, Lavin transferred assets from the Funds to make microcap stock investments that were unsuccessful and never disclosed in the Fund Memoranda. Answer, ¶ 2 (admitting Complaint, ¶ 30). The Fund Memoranda also made materially false representations about Lavin's background as a currency trader; rather than being a successful trader, Lavin previously operated an unsuccessful ponzi scheme that lost $1 million. *Id.* (admitting Complaint, ¶ 33). Lavin made knowingly false representations about achieving the targeted monthly returns. He knew that he could not meet the stated returns, but continued the pretense that his investments were earning the target rate. He also used investor funds for his personal expenses. Lavin made his false representations for the purpose of continuing to attract investor money, and investors relied upon those

Plaintiff's Summary Judge Motion
C07-1188RSL

7

false representations. Plea Agreement, ¶ 9. As a result, the false representations were material. *Id.*, ¶ 3 (acknowledging that materiality of representations is an element of the offense that Lavin is pleading guilty to).

Lavin and Global therefore concede that they sold investments in the Funds through knowing and material misstatements and omissions. The Court should therefore grant summary judgment regarding the Commission's second and third claims for relief. *Matsushita Elec. Industrial Co. v. Zenith Radio, supra*, 475 U.S. at 587.

### 2.   Defendants' Breaches Of Fiduciary Duties As Advisers.

In its fourth claim for relief, the Commission alleges that Lavin and Global violated their fiduciary duties as advisers to the Funds in violation of Sections 206(1) and 206(2) of the Advisers Act. The Advisers Act – along with the related Investment Company Act of 1940 – "substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus achieve a high standard of business ethics in the securities industry." *S.E.C. v. Capital Gains Research Bureau*, 375 U.S. 180, 186, 84 S. Ct. 275, 11 L. Ed. 2d 237 (1963). Congress therefore enacted the Advisers Act to "eliminate, or at least expose, all conflicts of interest which might incline an investment adviser -- consciously or unconsciously -- to render advice which was not disinterested." *Id.* at 191-92.

A Section 206 violation arises whenever an investment adviser violates his "affirmative duty of 'utmost good faith, and full and fair disclosure of all material facts,' as well as an affirmative obligation 'to employ reasonable care to avoid misleading' his clients." *Capital Gains, supra*, 375 U.S. at 194 (footnotes omitted). Stated otherwise, Section 206 imposes upon every investment adviser the common law-based fiduciary duties of loyalty and candor. *Id.*

In this case, the facts admitted by Defendants establish their violation of Sections 206(1) and (2). Defendants acted as advisers by managing and providing advice to the Funds. Answer, ¶ 2 (admitting Complaint, ¶ 12). Defendants admit to making material misrepresentations and omissions in violation of their duty to clients under Sections 206(1) and (2) to make "full and fair disclosure of all material facts." *Id.* (admitting Complaint, ¶¶ 18, 19, 22, 30, 33); Plea Agreement, ¶¶ 3, 9.[2] Defendants

---

[2] Section 206(1) requires proof that the adviser acted with scienter, while Section 206(2) does not have that
(continued...)

also admit to taking management fees that were not authorized and to using the Funds' assets for Lavin's personal expenses. Plea Agreement, ¶ 9. That misappropriation of the Funds' assets necessarily constitutes a breach of Defendants' traditional fiduciary duty of loyalty, and gives rise to a violation of Sections 206(1) and (2). *Capital Gains, supra*, 375 U.S. at 194. The Commission has therefore established its right to prevail on summary judgment on its fourth claim for relief.

### 3.   Defendants Illegally Sold Unregistered Securities In The Funds.

The Commission's first claim for relief is under Section 5 of the Securities Act. Section 5(a) and 5(c) of the Securities Act prohibit any person from selling a security through interstate commerce "[u]nless a registration statement is in effect as to [such] security," or from offering to sell or offering to buy a security "unless a registration statement has been filed as to such security." 15 U.S.C. §§ 77e(a), (c). To establish a *prima facie* case for a Section 5 violation, the Commission only needs to prove "first, that no registration statement was in effect as to the securities; second, that the defendant sold or offered to sell these securities; third, that there was a use of interstate transportation, or communication, or of the mails in connection with the sale or offer of sale." *S.E.C. v. Cavanagh*, 1 F. Supp. 2d 337, 361 (S.D.N.Y. 1998), *aff'd*, 155 F.3d 129 (2d Cir. 1998). Once the Commission has established a prima facie case, the burden shifts to the defendants to show that the transaction was exempt from registration. *See Cavanagh*, 155 F.3d at 133.

Defendants' Answer establishes all elements of a Section 5 violation. Defendants admit that they used interstate commerce and the mails to conduct the acts alleged. Answer, ¶ 2 (admitting Complaint, ¶ 7). They also admit using the internet, the telephone and email to solicit investments. *Id.* (admitting Complaint, ¶ 13). Lavin and Global admit selling securities in the form of investments in the Funds from 2002 to 2005 and obtaining over $5 million from over 100 investors. *Id.* (admitting Complaint, ¶¶ 12, 16). Finally, Lavin and Global admit that no "registration statement was filed with the Commission in connection with the offer and sale of investments in the Funds ...." *Id.* (admitting Complaint, ¶ 17).

---

[2] (...continued)
requirement. *S.E.C. v. Steadman*, 967 F.2d 636, 641 (D.C. Cir. 1992). Because the Answer and Plea Agreement establish that Defendants acted knowingly, the requirements of Section 206(1) have been met, and Defendants' violation of Section 206(2) follows as a necessary result.

Defendants' admissions fulfill the Commission's burden of establishing a *prima facie* violation of Section 5 of the Securities Act, and the burden therefore shifts to Lavin and Global to demonstrate why the investments in the Funds were exempt from registration. *Cavanagh, supra*, 155 F.3d at 133. Notably, Defendants' Answer does not allege, as an affirmative defense, any facts suggesting that an exemption from registration exists. As a result, no defense to the Section 5 claim may be found to exist.

## IV.   CONCLUSION

Defendants' Answer and Lavin's Plea Agreement establish the Commission right to prevail on its four claims for relief against Lavin and Global. The Court should therefore grant the Commission's motion for summary judgment.

DATED:   June 10, 2008

Respectfully submitted,

*/s/ John S. Yun*
John S. Yun
Kevin M. Gross
Attorneys for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION